UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABIGAIL MARIE SIMON,

       Petitioner,         Case No. 18-cv-11618
                   Hon. Mark A. Goldsmith

v.

SHAWN BREWER,

       Respondent.
_____/

**OPINION & ORDER**
**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) GRANTING A CERTIFICATE OF APPEALABILITY**

  Petitioner Abigail Marie Simon, a Michigan prisoner, filed this action under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Kent Circuit Court of three counts of first-degree criminal sexual conduct ("CSC I"), Mich. Comp. Laws § 750.520b(1)(b)(v), and accosting a minor for immoral purposes, Mich. Comp. Laws § 750.145a. See People v. Simon, No. 326149, 2016 WL 3365242, at *1 (Mich. Ct. App. June 16, 2016). The case involves acts of sexual penetration between the complainant, a 15-year-old high school student, and Petitioner, who was his 33-year-old tutor. Id. The trial court sentenced Petitioner to concurrent sentences of 8 to 25 years for the sexual misconduct convictions and 53 days for the accosting a minor conviction. Id.

  The petition raises one claim: the trial court denied Petitioner's right to a properly instructed jury and to present a defense by incorrectly instructing the jury on the voluntary act element of CSC I. Specifically, Petitioner claims that the jury instructions misled the jury to believe that the voluntary act element of the sexual misconduct charges would be satisfied even if

the minor forcibly raped her in each instance of sexual penetration, as she argued at trial.[1] However, the state courts reasonably determined that the jury was properly instructed on voluntariness and was instructed to acquit her if it believed the minor forcibly raped her in each charged instance of penetration. Therefore, the petition is denied. The Court will, however, grant Petitioner a certificate of appealability.

## I. BACKGROUND

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1), Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> This case concerns sexual conduct between [Petitioner], who was an academic advisor at Catholic Central High School in Grand Rapids, and [BB,] a 15-year-old sophomore at the school. Defendant was 33 years old. At trial, the victim described numerous sexual acts with defendant and the prosecutor presented extensive evidence of text messages, including sexual messages, between defendant and the victim. Defendant testified that three sexual penetrations occurred, but she claimed that, on each occasion, the victim raped her. Defendant also testified that all the text messages she sent to the victim, including ones where she told the victim that she loved him and ones where they discussed "rough" sex, were done to appease the victim. According to defendant, if she appeased the victim, he would not assault her. The jury convicted defendant as noted above.

Simon, 2016 WL 3365242, at *1.

At the close of trial, the jury was instructed as to the element of voluntariness and the defense of duress as follows:

> First, that the defendant voluntarily engaged in a sexual act that involved entry into the defendant's genital opening by [BB's] penis.

---

[1] This opinion uses the term "forcible rape" because Petitioner uses that term in framing her argument about a jury instruction's alleged flaw in discussing the voluntariness element of the crime. The Court recognizes that the term is controversial and potentially misleading, as evidenced by the FBI's decision to stop using it in the agency's crime statistics report. See Federal Bureau of Investigations, "Rape," https://ucr.fbi.gov/crime-in-the-u.s/2013/crime-in-the-u.s.-2013/violent-crime/rape, https://perma.cc/7QV8-K6KZ (2013) (noting the shift in terminology). The use of the term here is not meant as an endorsement for using it in other contexts.

. . .

Now, ladies and gentlemen, when I use the word quote/unquote "voluntarily" in the first element of criminal sexual conduct, it has a specific legal meaning that is different from the way the word is commonly used. To have quote/unquote "voluntarily" engaged in something, the defendant must have made some conscious act. The defendant's act is involuntary only if the act did not occur under the defendant's control, and she was truly powerless to prevent its occurrence.

Now, some examples of involuntary acts that could not be the basis for a crime are spasms, seizures, reflective [sic] actions and movements occurring while the actor is unconscious or asleep. However, if one consciously acts, then that is voluntary for purposes of this element.

Now, this is regardless of the motives for the act including whether or not the act was motivated by fear or self-preservation. The motive for an act can relate to the defense of duress which I will explain to you later. It does not relate to the first element of the criminal sexual conduct offense.

. . .

Now, the defendant says that if she did something that could be construed or considered a voluntary act, she is still not guilty because someone else's threatening behavior made her act as she did, and this is called the defense of duress. The defendant is not guilty if she committed the crime under duress. Under the law there was duress if four things were true.

> One, the threatening behavior would have made a reasonable person fear death or serious bodily harm.
>
> Two, the defendant actually was afraid of death or serious bodily harm.
>
> Three, the defendant had this fear at the time she acted.
>
> Four, the defendant committed the act to avoid the threatened harm.

Now, ladies and gentlemen, a threat of future injury is not sufficient to constitute duress. Rather, the threatening conduct must be present, imminent, and impending. In deciding whether duress made the defendant act as she did, think carefully about all the circumstances as shown by the evidence.

Think about the nature of any force or threats. Think about the defendant's knowledge of the background and character of the person who made any threats or used force. Think about the defendant's situation when she committed the alleged

> act. Could she have avoided the harm she feared in some other way than by committing the act? Think about how reasonable these other means would have seemed to a person in the defendant's situation at the time of the alleged act.
>
> The prosecutor must prove beyond a reasonable doubt that the defendant was not acting under duress. If she fails to do so, then you must find the defendant not guilty.

Trial Tr. vol. XI at PageID.870-871 (Dkt. 5-15).

The jury found Petitioner guilty of the offenses indicated above. Following sentencing, Petitioner obtained appellate counsel, who filed a motion for new trial, raising among other claims, a claim that the jury instructions were erroneous as to the element of voluntariness and violated her right to present a defense. The trial court held a hearing on the motion, after which it denied relief. See 8/12/15 Op. and Order, No. 13-09055, at PageID.1217-1223 (Kent Cty. Cir. Ct. 8/12/2015) (Dkt. 5-19).

Petitioner then filed a brief on appeal in the Michigan Court of Appeals that raised five claims. Among them was the claim she now presents in her habeas petition:

> I. Where the defense to the element of penetration on each of the three CSC 1 counts of conviction was forcible rape, appellant was denied her federal and state constitutional rights to due process of law, to present a defense, and to trial by jury (US Const., Ams VI, XIV; Const 1963, art. 1, §§ 17, 20) when the trial court committed structural error by rejecting the defense instruction on involuntary actus reus, and by giving a misleading and inaccurate instruction that the actus reus was not involuntary (and thus not shown), unless appellant was unconscious, or subject to an involuntary bodily movement such as a spasm or a seizure; as a result the prosecution was unconstitutionally relieved of its obligation to prove the essential element of actus reus to the jury beyond a reasonable doubt.

Pet. at 3 (Dkt. 1).

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion, finding that the jury was adequately instructed regarding the voluntary act element. Simon, 2016 WL 3365242 at *3. That court accepted Petitioner's premise that when a person is overcome through the use of physical force to engage in sexual penetration, she does not engage

4

in a voluntary act, and that she could not be guilty of first-degree criminal sexual conduct. Id. But it found, in the following statement, that the trial court's instructions on voluntariness fairly presented this principle to the jury:

> [W]e agree with defendant that, where sexual penetration occurs against a defendant's will only because a defendant is physically overcome through force, there is no voluntary act by the defendant. Rather, as opposed to being the perpetrator of criminal sexual conduct, the defendant would essentially be a victim, who was subjected to the sexual conduct involuntarily. See generally People v. Parks, 483 Mich. 1040, 1045; 766 N.W.2d 650 (2009) (YOUNG, J., concurring) ("'[S]exual conduct' is something that both 'actors' and 'victims' take part in— 'actors' voluntarily and 'victims' involuntarily."). In such circumstances, the sexual penetration would not occur under the defendant's control, nor would it be done because the defendant wanted it done. [People v. Likine, 823 N.W.2d 50, 66, 66 n.49, 492 Mich. 367, 394, 394 n.49.] Accordingly, defendant could defend the CSC I charges on the basis that the sexual penetrations were involuntary, and she was entitled to a jury instruction on involuntariness.
>
> . . .
>
> In our judgment, the court's instructions on CSC I fairly presented the issue of whether defendant's sexual conduct was involuntary. Consistent with Likine, the trial court instructed the jury that an act was involuntary when it "did not occur under the defendant's control, and she was truly powerless to prevent its occurrence." See Likine, 492 Mich. at 394. This broad explanation of involuntariness encompassed defendant's claim that her actions were involuntary because the victim physically overcame her and forced her to submit to sexual conduct against her will. In other words, had the jury believed defendant's version of events, it would have found her not guilty of CSC I on the basis of this instruction. Considered as a whole, the instruction given was sufficient to protect defendant's rights and she has not shown a reasonable probability of a different outcome had more detailed instructions on her specific claim been given to the jury.
>
> In contrast to this conclusion, defendant's argument regarding why the jury instructions failed to fairly present the involuntariness defense is two-fold. First, defendant claims that the phrases "conscious act" and "consciously acts" in the instructions indicate that an act is involuntary only if the defendant is unconscious, i.e., not having consciousness. While the word "conscious" can mean "having mental faculties undulled by sleep, faintness, or stupor," it can also mean "capable of or marked by thought, will, design, or perception." Merriam-Webster's Collegiate Dictionary (2014). Read in the context of the voluntariness instruction as a whole, the terms "conscious" and "consciously" refer not to an act done while the defendant was not unconscious, but to an act that was marked by thought, will, design, or perception. Stated differently, read in context, the phrases indicate that

5

> the defendant's act, to be voluntary, must have been an act chosen by the defendant. This conclusion is supported by the second sentence in the definition of "voluntary," which provides that an act "is voluntary only if the act did not occur under the defendant's control, and she was truly powerless to prevent its occurrence." Pursuant to this sentence, an act is voluntary only if it occurred under the defendant's control and the defendant had power to prevent its occurrence, which requires more than just the defendant's faculties being undulled by sleep, faintness, or stupor.
>
> Second, defendant claims that the examples that the trial court provided of involuntary acts were irrelevant and had to have led to the jury concluding that "any 'conscious' bodily act, even if physically forced against a defendant [ ]" was a voluntary act. The examples of involuntary acts that the trial court gave to the jury—spasms, seizures, reflexive actions, and movements while the defendant is unconscious or asleep—were not specifically applicable to the present case. However, the trial court stated it was giving "some examples" of involuntary acts. It did not state that the list of examples it gave was an exclusive list of involuntary acts. Thus, contrary to defendant's contention, the instructions did not limit involuntary acts to those that occurred while defendant was unconscious and those that resulted from involuntary bodily movement. Rather, when the jury instructions regarding involuntariness are read as a whole, the instructions fairly presented the involuntariness defense. According to the instructions, defendant was only guilty of CSC 1 if she "voluntarily engaged" in the sexual penetrations, meaning that she engaged in "conscious acts," such that the penetrations occurred under her control and she was not powerless to prevent them. There was no instructional error.

Id. at *3-5.

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, narrowing down her claims to the claim presented here as well as a sentencing claim. The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed." People v. Simon, 901 N.W.2d 860 (Mich. 2017).

## II. DISCUSSION

Petitioner argues that the trial court's instruction on the voluntary act requirement did not clearly explain that an individual cannot be guilty of an act or omission undertaken as a result of forcible rape by another person. Petitioner asserts that if the jury believed that complainant BB forcibly penetrated Petitioner in a way that would not constitute duress (because she was not in

6

fear of imminent death or great bodily harm), then there is a reasonable probability that they convicted her of criminal sexual conduct though believing she was the victim of forcible rape in each instance of sexual penetration. Petitioner relatedly argues that by so instructing the jury, she was deprived of her constitutional right to present her defense. Petitioner finally asserts that because the instructional error relieved the prosecution of its burden of proving an essential element of the offense (actus reus) beyond a reasonable doubt, the error was a structural one and not subject to harmless-error analysis. Each of these arguments will be addressed in turn.

Before addressing the substantive arguments the petition raises, the Court must first address the parties' controversy as to the standard of review. Petitioner argues that the Michigan Court of Appeals did not address the federal claim she raised before that court and again in her habeas petition. Consequently, she argues, the claim should be analyzed de novo. Respondent argues that the court of appeals did address those claims, so the petition should be analyzed under the deferential standard prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d). Respondent has the better of the argument, so AEDPA's deferential standard applies.

### A. The Michigan Court of Appeals is entitled to deference under AEDPA, because it addressed Petitioner's claims under the United States Constitution.

Where a state court fails to adjudicate a habeas petitioner's claim on the merits, the federal court reviews the claim de novo, rather than applying AEDPA's deferential standard. Cone v. Bell, 556 U.S. 449, 472 (2009). Petitioner argues that she is entitled to de novo review on this basis, because the Michigan Court of Appeals did not address two federal claims presented—that the instructions relieved the prosecution of its burden to prove an essential element beyond a reasonable doubt, and that the instructional error denied Petitioner her opportunity to present a defense. Pet. at 14.

Respondent argues that habeas courts must apply a rebuttable presumption that a federal claim was adjudicated on the merits, even when the state court rejects the federal claim without expressly addressing that claim. Answer at 12 (Dkt. 5) (citing Johnson v. Williams, 586 U.S. 289, 301 (2013)). Respondent further argues that in the course of rejecting Petitioner's claim under state law, it addressed her federal claims by implication. Pet. at 21.

In her reply brief, Petitioner does not address Respondent's argument concerning Johnson v. Williams, apparently relegating it to the "mass boilerplate in Respondent's Answer" that, in her view, did not warrant a response. Reply at 1 (Dkt. 6). Nor does Petitioner reply to the argument that the court of appeals addressed the federal claims implicitly when it addressed the Michigan claims.

Petitioner has not rebutted the presumption that the court of appeals addressed her federal constitutional claims. That court acknowledged the constitutional claims before launching into its instructional error analysis, strongly implying that it was considering the constitutional claims together with the state law instructional error claim. See Simon, 2016 WL 3365242, at *1 ("According to defendant, the erroneous instruction constituted a structural error, which violated her constitutional right to due process and prevented her from presenting her claimed defense."). Moreover, the court of appeals' opinion provides legally sufficient bases for denying each of Petitioner's federal claims. As discussed in greater detail below, the state court's determination that "[t]here was no instructional error," Simon, 2016 WL 3365242 at *4, and the reasoning surrounding that determination, implies the futility of the federal constitutional claims without the need for further explanation. Thus, the Michigan Court of Appeals appears to have addressed the federal claims, even if it could have been clearer that it was doing so. Therefore, the exception to applying AEDPA's deferential standard discussed in Cone does not apply.

8

In sum, Petitioner has not rebutted the presumption that the claims presently at issue were adjudicated on the merits in the Michigan Court of Appeals. Therefore, this case must be adjudicated under the deferential standard prescribed by AEDPA.

Under AEDPA, relief is barred unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law. 28 U.S.C. 2254(d). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). As stated in Harrington:

> Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington, 562 U.S. at 103 (internal quotation marks omitted).

9

> **B. Because the Michigan Court of Appeals reasonably determined that no instructional error occurred, Petitioner is not entitled to the writ based on a denial of her right to a jury trial in which all elements of the crime must be proved beyond a reasonable doubt.**

Petitioner first argues that she was denied due process because the allegedly erroneous jury instruction relieved the prosecution of its obligation to prove each element of the crime beyond a reasonable doubt. Specifically, she argues that the instruction relieved the prosecution of its obligation to prove a voluntary actus reus with respect to the three CSC I charges under which Petitioner was convicted. See Pet. at 22-33.

"Not every ambiguity, inconsistency, or deficiency in a jury instruction" violates due process. Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per curiam). Rather, instructional error "must be so egregious" that it renders "the entire trial fundamentally unfair." White v. Mitchell, 431 F.3d 517, 533 (6th Cir. 2005). The Supreme Court summarized the limits of federal habeas review of instructional error in the following passage:

> [T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief. See Marshall v. Lonberger, 459 U.S. 422, 438, n.6, 103 S.Ct. 843, 853, n. 6, 74 L.Ed.2d 646 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules"). Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to [a state model jury instruction]. . . . The only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973); see also Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977); Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right]'"). It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. Cupp v. Naughten, supra, 414 U.S., at 147, 94 S.Ct., at 400–01. In addition, in reviewing an ambiguous instruction such as the one at issue here, we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990). And we also bear in mind

>our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990). "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." Ibid.

Estelle v. McGuire, 502 U.S. 62, 71-73 (1991) (some modifications in the original, some added).

Petitioner contends the court of appeals failed to apply the proper test for evaluating an instruction subject to an erroneous interpretation, which is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Pet. at 12, 30.[2] Instead, Petitioner claims, the court of appeals merely concluded that the instructions "fairly presented" the voluntariness question and ignored the federal constitutional standard set forth in Estelle and Boyde. Pet. at 19. However, the court of appeals reached conclusions sufficient to support a denial of Petitioner's federal claims, even if it did not explicitly state that it was addressing the federal claims at every step along the way.

Contrary to Petitioner's assertions, the court of appeals went further than finding that the voluntariness questions was "fairly presented." In doing so, it satisfied the standard set forth in Boyde and Estelle. Petitioner's argument under Boyde and Estelle is that there is a reasonable likelihood that the jury applied the instruction in a way that prevented it from considering constitutionally relevant evidence that the complainant forcibly raped Petitioner.

The court of appeals recognized and rejected this line of argument. It found that that the instructions effectively communicated that the jury could not convict Petitioner if it credited her

---

[2] Petitioner misattributes this quote to Estelle, 502 U.S. at 72; however, it actually appears in Boyde, 494 U.S. 370, and is not quoted in full by Estelle, which states, "we inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." 502 U.S. at 72 (quoting Boyde, 494 U.S. at 380). Estelle explicitly reaffirms Boyde's standard, see Estelle, 502 U.S. at 72 n.4, and Boyde remains good law.

11

evidence that the complainant forcibly caused the sexual penetration to occur. See Simon, 2016 WL 3365242 at *5 (holding that the "explanation of involuntariness encompassed defendant's claim that her actions were involuntary because the victim physically overcame her and forced her to submit to sexual conduct against her will. In other words, had the jury believed defendant's version of events, it would have found her not guilty of CSC I on the basis of this instruction."). Going further, the court concluded that Petitioner had not shown "a reasonable probability of a different outcome had more detailed instructions on her specific claim been given to the jury." Id.

This final conclusion necessarily implies the court of appeals' answer to the question posed by Boyde and Estelle: whether there was any reasonable likelihood that the instructions prevented the jury from considering evidence that the complainant forcibly raped Petitioner. According the court of appeals, the answer was no. That court concluded that the instruction not only informed the jury to consider the evidence, but to exonerate her if it credited the evidence. In other words, the court concluded that the instruction accomplished exactly the task Petitioner's preferred instruction would have accomplished—informing the jury that Petitioner could not be found guilty for a sexual act caused by the complainant's forcible rape. Thus, the court effectively rejected Petitioner's federal constitutional argument.

Because the court of appeals addressed the relevant federal question, the only question for this Court is whether its decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. While Petitioner presents numerous arguments supporting her claim that the court of appeals opinion was so deficient as to warrant habeas relief, these arguments are insufficient for the task. Each of these arguments is addressed and rejected in turn.

First, Petitioner argues that the court of appeals erred because it allowed one accurate instruction—"The defendant's act is involuntary only if the act did not occur under the defendant's control, and she was truly powerless to prevent its occurrence," Trial Tr. vol. XI at PageID.870-871—to compensate for otherwise flawed instructions. Pet. at 18-19. Indeed, under both Michigan and federal constitutional law, the jury instructions must be read as a whole. See Simon, 2016 WL 3365242 at *1 (citing People v. McGhee, 709 N.W.2d 595, 606 (Mich. 2005)); Estelle, 502 U.S. at 72). But the state court did read the instructions as a whole. As Petitioner acknowledges when arguing another point, see Pet. at 20 (discussed below), the court of appeals squarely addressed the trial court's use of the terms "conscious" and "consciously," see Simon, 2016 WL 3365242 at *3—terms Petitioner claims may have misled the jury into believing that she would have to have been unconscious for a voluntariness defense to apply. It also considered the examples of involuntary acts the trial court provided—spasms, seizures, reflexive actions, and movements while a defendant was unconscious or asleep—and the impact those instructions would have on the jury. Id. at *4. Undoubtedly, Petitioner does not agree with the state court's conclusions on those points. But the argument that the court of appeals allowed one accurate component of the instructions to compensate for several inaccurate components lacks merit. The court found aspects of the instructions that Petitioner claimed were inaccurate to be accurate, and it concluded that the sum created by those parts and the incontrovertibly accurate statement was, as a whole, accurate. See id. at *1-4. The court of appeals did not violate Estelle or other federal constitutional cases by allowing one good instruction to save otherwise flawed instructions.

Second, Petitioner argues that the court of appeals erred by relying on a secondary definition of the word "conscious." Pet. at 20-21, see also Simon, 2016 WL 3365242 at *3. But Petitioner cites no law suggesting that a word in a jury instruction is ambiguous or misleading

13

simply because it has multiple meanings and the trial judge trusts the jury to discern the intended meaning from context. The court of appeals' determination that the words "conscious" and "consciously" contributed to an accurate jury instruction is justified by its reasonable reading of the dictionary and by its authoritative determination of state law, and it cannot form the basis of habeas relief. See Foucha v. Louisiana, 504 U.S. 71, 96 (1992) (Kennedy, J., dissenting) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); Gimotty v. Elo, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . ."); see also Middleton, 541 U.S. at 437 ("[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation").

Third, Petitioner argues that "the state court of appeals ignored the doctrine of ejusdem generis . . . while excusing a list of irrelevant examples that deprived Petitioner of her available, fact supported defense of lack of actus reus through forcible rape." Pet. at 21, 26-29. As noted above, the jury instructions stated that "some examples of involuntary acts that could not be the basis for a crime are spasms, seizures, reflective [sic] actions and movements occurring while the actor is unconscious or asleep." Trial Tr. vol. XI at PageID.870-871. The court of appeals did not specifically engage with the maxim ejusdem generis, "the statutory canon that where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 114 (2001) (internal quotation marks and citations omitted). It is true that the court of appeals did not explicitly discuss the canon, but Petitioner offers no authority that the canon has any role in the context of jury instructions. In any

14

case, the court of appeals did engage with the effect the trial court's inclusions of these examples would have on a jury, concluding, reasonably, that the trial court was clear that it was providing examples rather than an exclusive list of involuntary acts. Simon, 2016 WL 3365242, at *4. Petitioner has failed to show a flaw in the court of appeals' reasoning, much less one so severe as to warrant habeas relief.

Fourth, Petitioner repeatedly argues that the prosecutor misled the jury by arguing that to show involuntariness, Petitioner would have to prove that her otherwise-culpable actions were an uncontrollable reflex or an act taken while Petitioner was unconscious. See, e.g., Pet. at 27. The court of appeals did not address this argument directly, but it did find that the trial court's instruction was sufficient to protect Petitioner's rights. Simon, 2016 WL 3365242, at *3. This determination implies the court of appeals' belief that the jury applied the judge's instructions rather than any inaccurate statement by the prosecutor. This determination was reasonable in light of the trial court's instructions that closing arguments are not evidence, Trial Tr. vol. XI at PageID.839, that the jury must take the law as provided by the trial judge, id. at PageID.873, and that the jury should follow the law as provided by the court rather than by any of the attorneys, id. Even the prosecutor encouraged the jury members to "ask the judge" if they doubted anything the prosecutor said about the law. Id. at PageID.866. Petitioner has not shown a defect in the court of appeals' reasoning that the trial court's jury instructions were sufficient to protect Petitioner's rights, which implies that the jury instructions informed the jury to follow those instructions rather than anything the lawyers might say.

After considering each of Petitioner's arguments, this Court concludes that the court of appeals reasonably determined that the trial court's instruction on involuntariness did not violate Petitioner' constitutional rights. The prosecution was not relieved of its burden of proving each

15

element of the crime beyond a reasonable doubt, and Petitioner is not entitled to habeas relief on that basis.

### C. Because the Michigan Court of Appeals reasonably determined that no instructional error occurred, Petitioner is not entitled to the writ based on a denial of her right to present a defense.

Petitioner next argues that she was denied her constitutional right to present a defense. The Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense. California v. Trombetta, 467 U.S. 479, 485 (1984).

Petitioner argues that the "essence of the right to present a defense is the entitlement to present the 'defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.'" Pet. at 34 (quoting Washington v. Texas, 388 U.S. 14, 19 (1967)). However, Petitioner does not argue that she was denied the opportunity to present facts. Rather, she argues that it "follows logically that the due process right to present a defense is denied if the jury, due to faulty instructions, is prohibited from properly assessing a defense claim, when such a claim is factually supported, that the prosecution has not proven a key element of the charged offense (a voluntary actus reus here) beyond a reasonable doubt. . . . ." Id. (citing In re Winship, 397 U.S. 358 (1970); Sandstrom v. Montana, 442 U.S. 510 (1979)).

Whether the right to present a defense actually provides a distinct route for a habeas petitioner to present what is, essentially, a claim of instructional error, is not clear from the cases Petitioner presents. Washington v. Texas concerned the right to present witnesses, and Winship and Sandstrom concerned a criminal defendant's right to a trial in which all elements must be proven beyond a reasonable doubt—an issue addressed above. But this question is best left for another day. Petitioner's claim for the writ on this ground is premised on the existence of "faulty instructions." Pet. at 34. For the reasons stated above, this Court will not disturb the Michigan

16

Court of Appeals' determination that the instructions fairly communicated the state law. Therefore, Petitioner is not entitled to the writ based on a denial of her right to present a defense.

### D. The question of whether the "instructional error" was structural is irrelevant, because the Michigan Court of Appeals reasonably concluded that no error occurred.

Finally, Petitioner argues that "when jury instructions eliminate the burden of the government to prove each element of an offense beyond a reasonable doubt, structural error occurs, and a harmless error analysis is not required for a reviewing court to find a constitutional violation." Pet. at 35 (citing Sullivan v. Louisiana, 508 U.S. 275 (1993)).[3] Petitioner's argument is premised on the claim that the voluntariness instruction eliminated the prosecutor's burden to prove each element beyond a reasonable doubt. The Court defers to the state court's determination that the voluntariness instruction was accurate under state law for the reasons explained above, and nothing in the record or Petitioner's argument suggests that the instructions did not communicate the need to prove voluntariness—as defined by the instructions—beyond a reasonable doubt. Therefore, no structural error occurred.

## IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that

---

[3] This reading of Sullivan is not necessarily correct. Sullivan involved a definition of "reasonable doubt" that the Supreme Court had previously found unconstitutional. 508 U.S. at 277. This case, at most, involves an imprecise definition of voluntariness under state law. Petitioner's theory would seem to eviscerate Estelle's "reasonable likelihood" standard, as any instructional error as to an element that must be proved beyond a reasonable doubt would constitute structural error. However, the Court need not decide this issue, because the Michigan Court of Appeals found that instructional error did not occur.

reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists could debate the resolution of Petitioner's jury instruction claim. The Court will, therefore, grant a certificate of appealability.

## V. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. The Court grants a certificate of appealability.

SO ORDERED.

Dated: April 15, 2021  
       Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 15, 2021.

s/Karri Sandusky  
Case Manager